IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marbelis Isabel Maluenga Avila, | No. CV-26-00639-PHX-SHR (JZB) |
| Petitioner, | **ORDER** |
| v. | |
| Eric Rokosky, et al., | |
| Respondents. | |

Petitioner filed this action under 28 U.S.C. § 2241 challenging her immigration detention.  (Doc. 1.)  The Court directed Respondents to answer the Petition and required Petitioner to file a reply.  (Doc. 5.)  Upon review of the briefing, the Court will grant the Petition and order Petitioner's immediate release from custody.

**I.    BACKGROUND**

Petitioner is a native and citizen of Venezuela.  (Doc. 1 at 2.)  Petitioner arrived in the United States on March 23, 2023, and after being briefly detained, paroled into the country pending her immigration proceedings.  (*Id.*)  Thereafter, Petitioner applied for Temporary Protected Status ("TPS"), which was granted on April 9, 2024.  (*Id.*)  Her TPS was valid until April 2, 2025.  (*Id.*)  In March of 2024, Petitioner applied for asylum.  (*Id.*)  That application remains pending.  (*Id.*)

On June 11, 2024, an Immigration Judge ordered Petitioner's removal proceedings be dismissed.  (*Id.* at 2–3.)  Nevertheless, Petitioner was detained by immigration officers on January 26, 2026, and remains detained as of the date of this Order.  (*Id.* at 3.)

. . . .

## II.    DISCUSSION

As an initial matter, the Court finds Respondents have not discharged their obligations under the Court's February 12, 2026 Order to Show Cause (OSC) or 28 U.S.C. § 2243.  Title 28, section 2243 provides when a court directs a respondent to show cause for why a writ pursuant to § 2241 should not be granted, the respondent "shall make a return certifying the true cause of the detention."  28 U.S.C. § 2243.  Echoing this statutory directive, the Court's February 12, 2026 OSC directed that "[a]ny response must be supported by documentary evidence including, if applicable, affidavits by individuals with personal knowledge of the factual statements made therein and signed under penalty of perjury."  (Doc. 4 at 1.)  Here, however, Respondents have provided no evidence at all.  Accordingly, and at a minimum, they have failed to demonstrate Petitioner is properly and mandatorily detained pursuant to 8 U.S.C. § 1225.  The Petition can thus be granted on this basis alone.  28 U.S.C. §§ 2241(c)(1), 2243.

In any event, the Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. CONST. Amend. V. It is well established that the Due Process Clause applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  The Court's due process analysis is separated into two steps: "[F]irst[, the Court] ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so[, the Court] ask[s] whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

### A.  Statutory Classification

"A noncitizen's place within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) (cleaned up).  Here, Respondents assert that "Petitioner is properly detained under Section 1225(b)(2)(A), not Section 1226(a); Petitioner has no due process right to

release." (Doc. 7 at 4.)  The Court disagrees.  Rather, Petitioner is properly classified under 8 U.S.C. § 1226(a).

While Respondents treated Petitioner as an arriving alien on March 23, 2023, and could have subjected her to mandatory detention under § 1225(b), they elected to release her on parole.  (Doc. 1 at 8); (Doc. 1-1 at 10.)  Thereafter, Petitioner was granted TPS on April 9, 2024.  (Doc. 1-1 at 7–8.)  As a growing number of district courts have held, "petitioner[s] granted TPS status fall[] under 1226(a) because they are not . . . 'seeking admission' admission under § 1225."  *Diaz-Aguero v. Noem*, No. 2:26-cv-00637, 2026 U.S. Dist. LEXIS 73835, at *4–5 (W.D. Wash. Apr. 3, 2026); *Pena-Hernandez v. Noem*, No. 26cv0872-LL-JLB, 2026 U.S. Dist. LEXIS 74850, at *4-5 (S.D. Cal. Apr. 6, 2026) (finding a petitioner who was granted TPS and resided in the U.S. for two-and-a-half years was properly categorized under 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)); *Navarro v. Noem*, No. 2:26-cv-00334-TLF, 2026 U.S. Dist. LEXIS 35352, at *9 (W.D. Wash. Feb. 20, 2026) ("Petitioner has been in the community for over two years, was granted TPS, received employment authorization, and complied with reporting requirements.  At the time of his re-detention, he was not seeking admission at the border.  Accordingly, petitioner is an admitted individual whose redetection is governed by § 1226, and not an individual 'seeking admission' admission under § 1225."); *Medina v. Mattos*, No. 2:25-cv-02020-CDS-BNW, 2026 U.S. Dist. LEXIS 193, at *10 (D. Nev. Jan. 4, 2026) (finding that petitioner who was "not actively seeking to lawfully cross into the territorial limits of the United States because he already entered the United States . . . . released into the United States with a parole document valid for one year . . . . then applied for a TPS, which was granted," means that "§ 1226(a), not § 1225(b)(2)(A), governs the petitioner's detention").  Therefore, Petitioner's detention is governed by 8 U.S.C. § 1226(a).[1]

[1] Respondents argue that pursuant to the "entry fiction" doctrine, "[e]ven if the Court determines that Section 1225(b)(2)(A) does not apply (and thus that Section 1226(a) does), Petitioner would not be entitled to release nor a bond hearing." (Doc. 7 at 7 n.1).  The Court disagrees.  Numerous courts in this district and its sister districts have found that the entry fiction doctrine is of limited application.  Those courts have found that the entry fiction doctrine solely applies to the procedural rights of noncitizens regarding *admission*, not *every* procedure occurring in the immigration context—*i.e.*, the entry fiction doctrine

Even assuming *arguendo* that Petitioner's detention is—as Respondents argue—pursuant to § 1225(b)(2)(A) rathe than § 1226, this finding "'does not obviate Respondents' obligation to comply with due process' in re-detaining Petitioner." *Musaev*, 2026 U.S. Dist. LEXIS 75938, at *10 (quoting *Telenchana v. Hermosillo*, No. 2:26-cv-00363-GJL, 2026 U.S. Dist. LEXIS 51425, at *29 (W.D. Wash. Mar. 12, 2026)). Rather, recent caselaw confirms that an immigration detainee released on parole retains a liberty interest in his release and that "liberty interest [does] not expire along with his parole." *Guevara Serrano v. Bondi*, No. CV-26-00110-PHX-DJH, at *4 (D. Ariz. Mar. 9, 2026) (quoting *Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025)); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted . . . . That the express terms of the [§ 1182] parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide a[n] individualized bond hearing prior to re-detaining the parolee."); *Mody v. Warden*, No. 25-cv-03400-FMO, 2026 WL 51976, at *6 (C.D. Cal. Jan. 5, 2026) (issuing temporary restraining order where petitioner had been re-detained following expiration of his § 1182 parole); *Quiroga-Chaparro v. Warden of the Golden State Annex Detention Fac.*, No. 25-cv-01731-AC, 2025 WL 3771473, at *4–5 (E.D. Cal. Dec. 31, 2025) (same); *Ramirez v. Wamsley*, No. 2:25-cv-01723-KKE-TLF, 2025 WL 3288295 (W.D. Wash. Nov. 25, 2025) (directing immigration detainee's immediate release after he was re-detained following his parole's expiration, stating petitioner's "interest in his freedom is constitutionally protected" and that "the Government exercises discretion in determining whether to grant

---

is inapplicable to challenges to a petitioner's length of detention. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2026 WL 521557, at *28–31 (D. Mass. Feb. 25, 2026)[1]; *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (noting that when a petitioner "do[es] not challenge the admission process in any way or assert a right to remain in the United States," the entry fiction doctrine is inapplicable).

- 4 -

parole or extend it upon its expiration does not eliminate the protections afforded to Petitioner's liberty interest").

The applicable regulations also provide that if a non-citizen is re-detained after § 1182 parole expires, they "shall again be released on parole" if their "exclusion, deportation, or removal order cannot be executed within a reasonable time." 8 C.F.R. § 212.5(e)(2)(i); *D.L.C. v. Wofford*, No. 1:25-cv-01996-DC-JDP (HC), 2026 U.S. Dist. LEXIS 10287, at *9 (E.D. Cal. Jan. 20, 2026) ("Indeed, the applicable regulations state that if a non-citizen is re-detained after § 1182 parole expires, they shall again be released on parole if their exclusion, deportation, or removal order cannot be executed within a reasonable time.") (citation omitted). As noted, Respondents have provided no evidence to support that Petitioner's parole had expired or that her deportation was likely to occur within a reasonable time. Accordingly, Petitioner has a liberty interest in her release.

**B. Proper Procedural Process**

Because Petitioner has a liberty interest in her release, the Court must now determine what procedures are required to overcome that interest. To do so, the Court applies the three-part *Mathews v. Eldridge* test. 424 U.S. 319 (1976).[2] Under the *Mathews* test, the Court considers:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

As to the first factor, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the

---

[2] Although Petitioner argued that her release is compelled by *Mathews* (*see* Doc. 1 at 18-23), Respondents do not address this argument.

liberty protected by the Due Process Clause.); *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."); *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."); *Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018) ("Arbitrary civil detention is not a feature of our American government.  'Liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'") (cleaned up) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)); *cf. Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review") (citing *Boumediene v. Bush*, 553 U.S. 723, 781–83, 786 (2008)).  This factor favors Petitioner.

Turning to the second factor, "[w]here an individual has not received a bond or redetermination hearing, the risk of an erroneous deprivation [of liberty] is high." *Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 U.S. Dist. LEXIS 179594, at *33 (N.D. Cal. Sep. 12, 2025) (citation omitted).  The Court concludes there is a significant risk of erroneous deprivation where a bond or redetermination hearing has not been performed.  Therefore, this factor favors Petitioner as well.

Finally, as to the third *Mathews* factor, "[i]f the government wishes to re-arrest [a petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).  Further, detention hearings in immigration courts are commonplace and impose a "minimal cost." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal., 2025); *Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 WL 2912307, at *7 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively

burdensome."). In any event, "[d]etention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025). This factor thus favors Petitioner as well.

The Court therefore finds that the *Mathews* factors weigh in favor of finding Petitioner was entitled to a hearing before she was re-detained and placed in DHS custody. Accordingly, the Court will direct Respondents to immediately release Petitioner. 8 C.F.R. § 212.5(e)(2)(i); *see also Singh v. Unknown Party*, No. CV-26-00483-PHX-JCH (CDB), 2026 U.S. Dist. LEXIS 61597, at *9 (D. Ariz. Mar. 24, 2026) ("The Court finds that immediate release, rather than requiring another bond hearing, is the appropriate remedy.").

**IT IS ORDERED**:

(1)     The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

(2)     Respondents must **IMMEDIATELY RELEASE** Petitioner from custody under the same conditions that existed before her re-detention.

(3)     Respondents shall provide a Notice of Compliance within **THREE (3) BUSINESS DAYS** of Petitioner's release.

(4)     Any request for fees and costs pursuant to 28 U.S.C. § 2412 shall be filed within 30 days of final judgment. *See* 28 U.S.C. § 2412(d)(1)(B); (d)(2)(g).

(5)     The Clerk of Court must enter judgment accordingly and close this case.

Dated this 22nd day of May, 2026.

Honorable Scott H. Rash
United States District Judge